Our next case for argument is 24-2378, U.S. Inventor v. Squires. Good morning, and may it please the Court, Amanda Lesperance for the appellants. This appeal concerns the District Court's refusal to credit the appellants' well-treated factual allegations establishing organizational standing for the organizational appellants here. The District Court committed two errors in declining to find organizational standing. These errors alone warrant reversal of the District Court's dismissal for lack of standing. First, the District Court erred substantively in finding that the injuries alleged by the appellants are akin to the injuries alleged by the medical associations in FDA v. Alliance for Hippocratic Medicine. Second, the District Court erred procedurally in departing from the well-established rule that at the pleading stage, general factual allegations are to be taken as true, and any competing factual allegations should be drawn in favor of the plaintiff. Counsel, what specific language would you prefer rather than what is currently on the cover of the patents? So we are not asking for specific language. We are just merely asking for the opportunity for the organizational appellants and other inventors and advocacy groups in their position to be provided the opportunity to comment towards what that language should be. The current language misrepresents the state of the patent owner's current right to exclude, and this misrepresentation is inflicting harm not only on individual inventors, but on the missions of these advocacy organizations. Do you agree the current language follows the language of the statute? It does in fact. And I think we're not – our issue is with the fact that the USPTO is declining to provide any sort of clarifying language that better explains that this right to exclude in the statute has been narrowed in – by eBay and other precedent. But are you contending – let's say there are various judicial decisions that come out even post-eBay, that there would need to be further amendments to the language to account for every case that might have some sort of import? I think – well, we can't foresee that. I think that because of the – I think that that would be warranted. This is the first piece of paper that a patent owner receives upon issuing a patent, and this is a representation that they are entitled to rely on. So it should reflect the state of the law accurately. So yes, we would contend that this should reflect the state of law even as it continues to evolve. I mean, that seems hard to actually administer as a practical matter. I think that the difficulties – I mean, this is contemplated by the Administrative Procedure Act. Any sort of substantive rules that are made – the USPTO is required to provide notice and comment rulemaking. And here the petitioners have submitted such a petition, and that has been declined to be considered by the USPTO. So maybe you can go back to the standing as to the organizations. You were saying in your introduction that you think this is different from the Supreme Court's indication that spending that you voluntarily undertake for an educational purpose or something like that is not spending that can create standing. I wonder if you can just tell me more about that. Yeah, of course. So that is correct. That is our position. This case is unlike Alliance. The advocacy organizations there voluntarily elected to spend their time and resources advocating against a policy they disagreed with. However, here the alleged injury is more operational. The USPTO's misleading patent cover language has impaired the appellant's ability to deliver their core services and to carry out their mission as advocates and as counseling providing counseling services for independent inventors and small business owners. So these organizations were established to provide inventors with primarily counseling services such as giving investment advice and advice in terms of starting a business. And they also primarily provide networking opportunities. So the USPTO's conduct frustrates and impairs and in some cases prevents the organization from providing those services. In your complaint about that, it seemed like it was basically that you have to spend money to educate people about the true state of affairs of the patent system. Is that a fair assessment? I mean, that is definitely something that these organizational appellants have had to undertake, but that's not the injury at issue here. It is more so that their membership and potential membership base are being harmed by their reliance on this language. But by the time that they turn to these organizational appellants for guidance and advice, the harm has been done and they can't provide counseling services to undo that harm or provide counseling service that will allow them now to bring their businesses to commerce and to start their inventions to commerce. Well, now you're talking about harm to members of the organization and asserting the organization's ability to assert that harm on their behalf rather than a harm to the organization, right? If you're talking about a harm that's already complete and was suffered by the members. Yeah. So, if I understand your question correctly, our focus is on the harms inflicted upon the organizations themselves. So that was talking about that their missions are being impaired. They can't provide counseling services towards providing inventors with opportunities to start businesses, and they also can't provide the networking opportunities that they have in the past because of their members' reliance on this misleading patent cover text. So we think that alliance does not apply here and that the injuries being alleged here are more our par with the injuries alleged by the plaintiff in Havens Realty Court v. Coleman where their mission was perceptibly impaired, and there the court has said that there can be no question where a mission of an organization is impaired that they have suffered an injury in fact. Now, just to be concrete about what you're saying, now it's not even that the organization is spending money or undertaking things to remedy this misinformation. It's that the organization can't do that because it can't do things it would otherwise want to do? Yeah, that is correct. Many of... So these organizations were founded, as I stated, to help inventors seek out business opportunities and investment, but because these inventors are relying on the patent cover text and that they maybe have already disclosed their inventions to their detriment, and that can't be undone by the organizational appellants. All they can do now is caution against sharing their ideas, and that kind of ability to provide them with the opportunity to bring their ideas to commerce or to share amongst the organizational appellant's community is lost. So there, I guess I'm still a little confused. So it's that the organization is harmed, just help me fill it in. The members, I get it. The idea is the members have done different things than they would have done, and how is the organization harmed? They're harmed in two ways. As I mentioned first, by not being able to provide business counseling, now they're kind of being forced to be more a damage control and advise them against their members disclosing their inventions. Why can't they provide business counseling? Because the harm's already been done. For most of these, their members, the potential members, these are first-time inventors, and often receiving the patent is the first step. They haven't gotten to the organization.  They can give them whatever advice they want to give about their business. That is true, but the foundational bedrock of these organizations is to help these inventors create thriving livelihood and business offices of their inventions, and that's lost because they are misrelying. They're relying on the misrepresentations of the USPTO. Do you agree with us so that a patent owner can still obtain injunctive relief if they meet the standards set forth in eBay? We agree with that. The membership base, however, of these organizational appellants are, as I've said, independent vendors and small business owners that are less likely to be able to receive injunctive relief over the larger corporations that are often copying these inventions. Elise, in your Gray Brief, you did say you limited your standing arguments in certain ways. Do you agree with me that you are no longer making arguments with respect to Paul, Warrenville, Merck Exchange, LLC, and San Diego Inventors Forum? We agree that we are no longer making those arguments as to the two individual appellants. However, we maintain that San Diego Inventors is part of the organizational appellants who have been harmed directly by the USPTO's conduct. I think in your Gray Brief on page 3, you said you were limiting your standing arguments to just the people or just the organizations identified here. You have A, B, and C. A, US Inventor. B, Canadian Grids and Inventors Network of Minnesota. I don't see San Diego Inventors Forum in that language. So it's page 3 of the Gray Brief I'm looking at. I believe that this is referring to the associational standing arguments we were making, but to the extent that the court believes that the arguments have been waived as to San Diego, we're willing to move forward with just those three organizational appellants and believe that the alone warrants reversal. Okay. We should save some time for rebuttal. Yes, ma'am. Okay. Mr. Shaw. May it please the court. Whaley Shaw for USPTO. I'd like to begin with associational or representational standing and causation. The Patent Act at Section 154A1 directs that every patent shall contain a short title of invention and a grant to the patentee of the right to exclude others from making a patent  making, using, offering for sale, or selling the invention throughout the United States. The USPTO, in compliance with the statute, includes that grant on the cover of every issued patent. Now, eBay expressly acknowledged this statutory right but explained that the creation of a right is distinct from the provision of remedies for violations of that right. In other words, eBay affirmed the right to exclude and merely addressed a plaintiff's remedies for a violation of that right. I don't need a panel on any of this. I mean, this is, like, about why this language is reasonable to include. But this is a standing. I mean, this is – there are many standing problems. There are many ways that the court could conclude that plaintiffs lack standing. And this just seemed like, you know, perhaps a straightforward one that's cross-cutting that addresses all of the claims by the individuals. And I think it's a fundamental legal problem with the type of claim that they're bringing. So it doesn't matter if, you know, the district court were to give – leave to amend the complaint. There's no way to amend the claim to state a claim that would satisfy the requirements of Article III standing. But what you're articulating just now feels to me more like a merits argument, a defense of the language on the cover. Like, there's a distinction between right and remedies that a lawyer would understand and maybe a patent owner should understand, too. And so there's no issue with the language. That feels like that's the merits argument. I certainly agree. It does overlap with the merits. But if I can explain why it also speaks to standing. The reason is that, you know, the Supreme Court is making clear that there is a difference between a right and the remedy. And the statutory language that's included on the cover of patents and is required by statute speaks to rights. So what plaintiff's complaint amounts to is an argument that the PTO should gratuitously provide additional advice about patent remedies. But the same could be said for any patent law doctrine that could preclude a patent owner from ultimately obtaining injunctive relief. So it could be equitable estoppel or prior commercial use. These all seem like good merits arguments as to why you wouldn't want to change that language and why it would be impractical. But as to the standing piece, they do allege, hey, I was misled by this language. I didn't understand it to mean, you know, this sophisticated lawyerly understanding of rights versus remedies. I just thought it meant I'd be able to get an injunction to prevent this. I think this goes directly to the traceability prong of the standing analysis. Because there is no way, there is no plausible way in which a plaintiff's misunderstanding of patent law doctrine, ignorance of the eBay decision, is traceable to a statement regarding rights that is required by statute on the cover of patents. It does not, the statute does not require anything about remedies. There's no expectation that PTO should provide information about remedies on patent covers. Just the same as any other doctrine. That's a strange argument. Because prior to eBay being decided, for 100 plus years, patent owners had an automatic right to an injunction whenever a patent was infringed. And the PTO language was understood to parallel that. So the law changed, but you're now saying, but it somehow, on the face of the document, it was unreasonable for people to believe the way the law was for more than 100 years. That's not, we're not making any claim about what people can or cannot believe based on the patent cover language. Again, the patent cover language is merely compliance with a statutory requirement for what must be included with the patent. I guess I'm just trying to steer you as my learned colleague has several times, but somehow ineffectively, towards your actual standing arguments. Sure. That's away from the merits and towards the standing. Absolutely. And you've kind of gotten five minutes worth of hints to do that, and you've decided to reject all of them and continue down this path. So if you want to keep going. No, absolutely. I'm happy to discuss some of the other problems with standing. So first of all, with respect to Summers v. Earth Island Institute makes clear that plaintiffs have to identify, the plaintiff organizations have to identify members that have standing in their own right. And for each of the identified members here, they cannot establish standing at this point, because first of all, they're seeking prospective relief, and that means that they must demonstrate a prospective future injury. And obviously, these members all know about the eBay decision already, and there is no sense in which they are harmed by, they will be harmed in the future by the language that currently exists on the cover of their patents. Which, by the way, plaintiffs are not claiming that the PTO has to go back and redo those patents and reissue them to provide the proper language. Presumably, they're seeking only relief with respect to future patents. And so again, none of the identified members have a redressable future injury. And so that also is sufficient. So what about the Havens case? So the opposing counsel relies on Havens to support her argument. Do you have a response to that case? Yes, absolutely. So I just want to be absolutely clear that the Alliance for Hippocratic Medicine case was very careful to make clear that the theory of diversion of resources that some courts have read into Havens is no longer good law and that Havens would be read narrowly. And here is the language from the Alliance for Hippocratic Medicine case. The Supreme Court said Havens was an unusual case, and this court has been careful not to extend the Havens holding beyond its context. So, too, here. So the way the Supreme Court interpreted Havens is to cover cases in which the government directly injures the plaintiff organization. So there it said it was like a manufacturer who sells defective goods to a retailer. So that would be as if the government had directly given the plaintiff organization some incorrect or misleading information, and then therefore they relied on that information and were somehow hampered in the performance of their mission. But that's not what they're saying at all. What they are saying is that what is stated on the cover of the patents has caused members of the public or their members to need different assistance from these plaintiff organizations, and so therefore they don't have the information, so we have to provide the information. And that is exactly the type of harm that the Supreme Court said was not enough in Alliance for Hippocratic Medicine. There the claim was that the government was not releasing information about the risks of Mifepristone, and therefore that these plaintiff organizations had to go step up and do that work themselves, and the public needed more education because the government wasn't doing it. And that's exactly the same claim that the plaintiff organizations are making here. And for the reasons that are stated in Alliance for Hippocratic Medicine, I think that theory is now precluded. More generally, the sort of diversion of resources theory that courts have relied on in the past I think is no longer good law after that Supreme Court decision. And in fact, in the Fourth Circuit, that court had rejected that theory even earlier in the Lane versus Holder case from 2012. If the court has no further questions. Okay, thank you, counsel. Thank you.  Your Honors, the government makes many arguments as to why the district court should not reverse the motion to dismiss. However, the only arguments as to the standing issue that these that that the appellees have made are just attempts to undercut the in doubt the plausibility of the plaintiff's applications. These are arguments to be decided on the merits, and they may or may not prevail. But what matters is that the appellants here have provided plausible, well pleaded factual allegations as to standing, and they should be considered without making inferences in the government's favor. As to the Havens case, the government describes exactly what the organizational appellants have faced here. The USPTO is providing misleading information that is hampering the missions and functionalities of these organizational appellants. They're not giving it to the organization, right? Excuse me? They're not giving it to the organization, right? They're giving it to members of society. They are, and that in turn impairs. Like in Havens, the misleading information was given to individuals seeking housing, and the harm to the organizations alleged there is that they weren't able to provide counseling services because of that misinformation. So that's kind of the same dynamic that we are looking at here. Why can't you provide counseling services? Because the harm's already been done. A lot of these independent inventors, they've already relied on the misleading patent cover language. This is the first document they received upon receiving that patent, and there's no amount of counseling that can undo that harm. What's the harm? What did they rely on? So they relied, they believed that they had a right to exclude, and in believing that right, they often have disclosed their inventions to others, leaving them susceptible to copying. Well, the patent has issued, correct? That is correct. But the patent's public, so how have they been harmed by disclosing their invention to others when the document's already publicly accessible? Well, because, I mean, I think that's a bit of an issue to be dealt with on the merits of them, but I think that it remains the fact that a lot of that, that that disclosure has been made, and now that these organizational appellants cannot undo that fact and provide the counseling that can allow them to create successful businesses. And to the government's last point, the district court and the government is treating this as a case of voluntary advocacy. When the USPTO promises a right to exclude that the law does not guarantee in every case, independent inventors really rely on that assurance. And so that dynamic strikes at the heart of the appellant's missions. So the appellants here have plausibly alleged a concrete injury, traceable to the USPTO's misleading representation, that would be redressed by the relief sought. So that we respectfully request that the court reverse remand so this case can be heard on the merits. I welcome any other further questions your honors have. Anything further? Thank both counsels. Please take the next admission.